The next case of the day, Vyloha v. Barr. Appeals 1822-90 and 1832-98. And we'll hear first from Mr. Kern. Good afternoon, Your Honors. May it please the Court, my name is Michael Kern and I represent Petitioner Jiri Vyloha. While the procedural history of this case is somewhat convoluted, this Court's jurisdiction to hear this appeal, as well as factual background, are undisputed. I would like to address two main issues. Each of them will provide an independent ground for granting the relief requested in our appeal. First, I would like to address the immigration courts and the Board's denial of Mr. Vyloha's motion to reopen. The record is very clear that Mr. Vyloha's first immigration lawyer has failed on all counts. As counselor and attorney, he was expected and, in fact, affirmatively promised to guide Mr. Vyloha throughout the process. He didn't do that. He didn't even explain to his client that in removal proceedings, unlike in virtually any other civil case, his personal appearance was mandated, was necessary. Is there any evidence in the record that your client took any steps after that hearing when he received oral and written notice, that he took any steps to follow up with his attorney or do anything in response to that information? No, Your Honor, there is nothing of that nature in the record, except for Mr. Vyloha's own affidavit that he was told, I will let you know what you need to do and when, by his first counsel. That never came. Second, the first attorney of Mr. Vyloha failed to show up for a continued removal hearing himself. Third, and most importantly, when Mr. Vyloha was ordered removed in absentia, the written order of the court was sent to his lawyer's office in the mail. Attorney has chosen to not share the bad news with his client and has chosen to not advise Mr. Vyloha to file a motion to reopen within 90 days, as he was allowed under the statute. How do you satisfy your client's due diligence requirement? Your Honor, before the order of removal, he has retained counsel who filed appearance. Now, we know in immigration court, one cannot just choose to no longer represent a client. You have to file a motion to withdraw as counsel. You have to inform your client of your decision to no longer act as an attorney. And that's what the counsel didn't do. What about your client's obligation to undergo some due diligence to seek relief? Is there any evidence to support that? No, Your Honor, except that, again, he hired the lawyer, he knew the lawyer would, quote-unquote, take care of the case and inform him what, if anything, needed to be done by him. There was also a statement in my client's affidavit, in the record, that at some point in early 2000, he was arrested for driving without a license. He was told that there is an ICE detainer on him. Yet, when the ICE did not, in fact, show up to pick him up, he took that as an evidence that the case was resolved. My lawyer did what he promised. I no longer have to worry about removal proceedings. And this is precisely why he did not learn of the actual order of removal until 10 years later, when he was taken into custody by the ICE. As soon as he knew, he filed a motion to reopen. The motion was denied, as you suggested, for lack of diligence. And, you know, you have to realize, this is not a case where an attorney made an error. The client immediately knew about this error, yet waited for some 10-plus years before trying to remedy this situation. In this case, one of the most egregious, I would believe, elements of ineffective assistance of counsel was the fact that the lawyer has purposefully concealed the existence, the very existence, of an order of removal from Mr. Valoja. And thus made it impossible for him to address something that he did not know existed. Both the court and the board also refused to reopen Mr. Valoja's removal proceedings because they felt that he suffered no prejudice. After all, he did receive a notice of his next hearing. And in doing so, they relied on this court's prior holding in the same case when you found that service of a document in English on a non-English speaker usually satisfies due process because the alien is now put on notice that he needs to take further steps and seek assistance of someone who can help him to overcome the language barrier. But this holding would not be applicable under the facts of this case. Mr. Valoja had done precisely that. He hired a licensed attorney who has filled all ethical duties he owed to his client. Mr. Kern, what is the status of the I-130 petition based on Mr. Valoja's marriage? It has been approved by the service. So what's… Well, Mr. Valoja was removed from the United States back in October. So the case is now going through consular processing. Unfortunately, the order of removal adds a second barrier for him to be able to reunite with his wife and his United States citizen child. How so? Well, statutorily, anyone who was removed under the order of immigration judge is inadmissible for at least five years. Cannot enter the United States, cannot get an immigrant visa for at least five years. Even with an I-130 having been granted? Correct, correct. Reversal of that order of removal would cure that problem. If I may proceed? Please. All right. Second, a completely unrelated issue that is also crucial to Mr. Valoja's case is the Supreme Court holding imperial recession. In substance, in order to enter a valid order of removal, the court has to have subject matter jurisdiction. In order for immigration court to have that jurisdiction, the DHS had to file a charging document specifically notice to appear. And it's not just any piece of paper with the words notice to appear on top. It has to be a document as defined by statute. The Supreme Court in Pereira held that a notice to appear that fails to inform a non-citizen of a time and place of his hearing does not satisfy that requirement. So it didn't satisfy it for purposes of the stop time rule. Is it your position that a Pereira error can never be cured? Your Honor, that's the only logical reading of the court's holding. The court, you're absolutely correct, they stressed that they were answering a narrow question as it pertains to stop time rule. The Supreme Court was never asked to rule on the issue of jurisdiction in general. That's why their holding never addressed that issue. But it doesn't mean that had they been asked, they would have found otherwise. How do you get around their saying it was a narrow holding? You're trying to take this narrow holding and apply it beyond the stop time rule. What's the basis to do that? Your Honor, again, I would urge you to look at the fact that the court was not asked to comment on the overall statutory scheme of immigration court's jurisdiction. They were asked only whether or not that defective NTA satisfies the requirement to stop the clock for the stop time rule. Are you aware of any circuit that has applied Pereira beyond the stop time rule? No, I'm aware of the 6th and the 9th Circuit decision that agreed with the board's holding in the matter of Bermuda's quota that held otherwise. But I would respectfully disagree and ask this court to look at what basically Bermuda's quota held. First, they applied the definition of NTA as given in regulation. And as we all agree, regulation should interpret the statute, not replace it. That says, well, whatever the Congress required in the statute, you don't have to follow it. A lesser will be good enough. There is just no basis for that regulation. And therefore, the court needs to apply the statutory definition for the notice to appear. I see I'm running out of time. I would like to raise one more issue that's also crucially important. In this case, we're dealing with an order of removal entered in abstentia. In other words, when Mr. Galoja failed to appear for his hearing. The right to enter such an order is also a creature of statute. The United States Code 1229A, cited in my brief, sets out the requirements of what must happen before the immigration judge has authority to enter any one order in absentia, in their absence. And one of the requirements is serving a recharging document under 1229A, which is the statutory definition that is not present in this case. Thank you, counsel. For the government, Ms. Leach. May it please the court, Abigail Leach for the Attorney General. This case presents two issues for this court to review. The first is whether the board properly dismissed Mr. Galoja's appeal of the immigration judge's decision to deny his motion to reconsider. For that motion to reconsider did not establish any error of law or in fact in the immigration judge's earlier decision to deny his untimely motion to reopen. The second issue is whether the board abused its discretion in denying petitioner's motion to reconsider filed with the board and terminate his immigration proceedings in light of the Supreme Court's decision in Perera v. Sessions. In both instances, the board acted appropriately. With respect to the first issue, the board did not err in denying his motion to reconsider. I apologize. With respect to the first issue, the board correctly pointed out in its decision that Mr. Galoja conceded that he missed the filing deadline by approximately 10 years, but did not meaningfully present any argument or reason why he could not have been expected to file earlier to establish due diligence to warrant equitable tolling of the filing deadline. Similarly, in his brief to this court, he does not show that the board abused its discretion in dismissing his appeal, where he again points to no error in the immigration judge's decision to deny his untimely motion. When do you think he was first on notice, Mr. Galoja, was first on notice that his lawyer had just abandoned him? You know, I'm not sure when he would have been on notice that his lawyer may have abandoned him, but he was aware that he was in removal proceedings as he showed up to his rescheduled hearing. He knew that he had an ICE detainer on him when he was in custody for violating his probation. And upon release, when nobody showed up to come and get him, that would have triggered the duty of inquiry to look into his case to satisfy his due diligence requirements. Why? Why trouble trouble in that situation, right? He didn't offer any explanation, reason, circumstance for why he could not have been expected to file earlier, and that would have satisfied his due diligence requirement. In fact, counsel just conceded that there was no evidence in the record that he exercised due diligence. Do you agree that the I-130 petition has been granted? I'm not aware of the status of that particular petition. Assuming that that's correct, has Mr. Kern accurately stated the consequences of this order? I'm not sure of the exact deadline for returning, but in order to return, he would have to file and get an approved visa petition in order to return. Given that he has a U.S. citizen spouse and child at this point, and if the I-130 has been approved, what purpose is served by continuing to keep him outside the country? He's been arrested for a DUI. He violated his probation. Ten years ago, right? Yes, it was ten years ago, per the record, yeah. He served time in jail for violating his probation, which is when he found out that he had an ICE detainer, and then continued to not pursue or seek any type of relief to legalize his status. He didn't exercise due diligence. He didn't in any way. None of those things are disqualifying under the I-130 provisions, right? That's right. Let me ask you a question about the statute on the notice to appear and the corresponding regulation. Although the statute appears to require that the time and date of the initial hearing be included in the notice to appear, the regulation doesn't require that. That's right, yeah. Can you explain that to me? It seems to me that regulation should conform to the statute. Although the INA contains language regarding proceedings for deciding the admissibility or removability of an alien, it does not address jurisdictional prerequisites. Rather, it allows for the Attorney General to promulgate regulations to govern removal hearings, which include provisions for when and how jurisdiction vests with the immigration judge. This court actually issued a decision in Dababna in 2006, which did address that issue and appropriately considered that the regulations establish when subject matter jurisdiction vests with the immigration court, and that is when the notice to appear is filed with the immigration court. That DHS satisfies its obligations under the statute in two documents rather than in one did not strip the immigration court of jurisdiction in that case. Hasn't every circuit that's addressed that precise issue found the same thing? To my knowledge, yes, that's correct. So can I go back to the I-130 for a moment and its consequences? I believe the record here shows that last fall a divided panel of this court denied the petition to stay removal, correct? That's right. If that petition had been granted and Mr. Vailloja were still in the United States, would he be required to leave for five years before he could take advantage of the I-130 grant, or would he be able to stay here? I'm not sure. I don't know. Regarding the second issue in this case, the board did not err in denying Mr. Vailloja's motion to reconsider that was filed with the board to reconsider and terminate his immigration proceedings in light of the Supreme Court's decision in Pereira because, as I was just discussing, in Dababna, jurisdiction vests with the immigration court where the notice to appear is filed with the immigration court. Importantly, the regulation does not require that the date and time of the proceedings to appear in the initial notice in order to vest jurisdiction under the regulation. Rather, the regulation compels inclusion of such information where practicable under 8 CFR 1003.18. When that information is not in the notice to appear, the regulation requires that the immigration judge to schedule the initial removal hearing and provide notice to the government in the alien of the time, place, and date of the hearing. Mr. Vailloja's reliance on Pereira does not point to a different conclusion. That case dealt only with the narrow issue of if the government serves a non-citizen with a document that is labeled a notice to appear, but it does not specify either the time or date of the initial hearing, does it trigger the stop time rule? The court held that it did not trigger the stop time rule and emphasized multiple times the narrowness of its ruling. As the court explained, the analysis of the question presented in Pereira hinged on the intersection of two statutory provisions not at issue in this case. And Pereira simply has no application here. If there's no further questions, I yield the rest of my time. All right. Thank you very much. Mr. Kern, anything further? Yes, Your Honor. If I may, I didn't know. I used all of my time. Go ahead. One minute. Thank you. First and foremost, the precedent decision in the circuit that was just cited by counsel was pre-Pereira. I would beg the panel to reconsider that decision in light of the recent Supreme Court's holding. And I would also stress that the Court of Immigration Appeals' decision to compute a quota is not owed any Chevron deference. Why? Because as the Supreme Court held, when the statute is clear and unambiguous, there is no room for agency interpretation that is inconsistent with the statute. And to summarize, we've identified the three bases for granting a petition for review in this case. First is error in denying the motion to reopen. Second is the Supreme Court holding in Pereira. And third, the fact that my client was ordered removed in absentia where the statutory provision for such order of removal was violated. And with that, I will thank the panel. Thank you very much, Mr. Kern. Thanks to both counsel. The case will be taken under advisement. We'll proceed to the final case of the day.